U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 MAR 21 PM 4: 13

CLERK

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

NEIL BEAUDRY,                          )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )        Case No. 2:17-cv-23
                                       )
JAMES MCKNIGHT, in his individual      )
and official capacities; JAMES WARDEN, )
in his individual and official capacities; )
UNKNOWN DEFENDANT, in his/her          )
individual and official capacities; TOWN )
OF SHELBURNE; and PAUL BOHNE,          )
in his individual and official capacities, )
                                       )
        Defendants.                    )

**OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTIONS TO DISMISS**
(Docs. 48, 49, 50, 51)

Plaintiff Neil Beaudry, who is self-represented, brings this action against

Defendants in their individual and official capacities alleging violations of his civil rights,

conspiracy, and state-law claims. His claims arise from a traffic stop of a vehicle he was

operating on a Vermont public highway in the early morning hours of February 11, 2014.

Pending before the court are Defendants' motions to dismiss. (Docs. 48, 49, 50, 51.)

In his Second Amended Complaint ("SAC"), Plaintiff alleges Town of Shelburne

("Shelburne") Police Officer James McKnight issued him a speeding ticket and charged

him with operating under the influence of alcohol ("DUI") in violation of Vermont law.

Based on the initial stop and succeeding events, Plaintiff alleges thirteen claims:

(1) unlawful seizure pursuant to 42 U.S.C. § 1983; (2) fabrication of evidence;

(3) unlawful arrest; (4) malicious prosecution; (5) assault and battery and excessive force;

(6) violation of due process; (7) supervisory liability against former Shelburne Town

Manager Defendant Paul Bohne; (8) supervisory liability against former Shelburne Police

Chief Defendant James Warden; (9) municipal liability against Shelburne; (10) abuse of process; (11) conspiracy under 42 U.S.C. § 1983; (12) conspiracy under 42 U.S.C. § 1985;[1] and (13) intentional infliction of emotional distress. Plaintiff seeks compensatory and punitive damages.

Defendants have moved to dismiss Plaintiff's SAC under Federal Rule of Civil Procedure 12(b)(6), arguing that it fails to state a claim for which relief can be granted. In the alternative, Defendants argue that Plaintiff's arrest and prosecution were supported by probable cause or arguable probable cause, entitling Defendants to qualified immunity. Plaintiff opposes the motions.

## I.     Procedural History and Background.

On February 10, 2017, Plaintiff filed his Complaint and notice of self-represented appearance. On May 3, 2017, without serving the Complaint, Plaintiff filed an Amended Complaint. On August 1, 2017, Plaintiff sought and received an extension of time to serve the Amended Complaint, which he understood "superseded the original complaint[.]" (Doc. 4 at 2.) Returns of service demonstrating service were filed.

On August 28, 2017, Shelburne moved to dismiss the Complaint and the Amended Complaint. On August 30, 2017, former Shelburne Supervisor Bohne filed a separate motion to dismiss arguing: (1) Plaintiff failed to accomplish service within ninety days of commencing the action; (2) the Amended Complaint failed to comply with Fed. R. Civ. P. 15; and (3) the Amended Complaint failed to state a claim upon which relief can be granted. Following Defendants' filings, on September 4, 2017, Plaintiff filed a second motion to extend time for service of the original Complaint because "[t]here is a question[] . . . that Defendant[]s may have been served with an improper amended filing of the complaint, in which case I ask to extend the time so that the proper original

---

[1] In Count Twelve, Plaintiff asserts a claim under 42 U.S.C. § 1985(3) for conspiracy against all Defendants. In his opposition to Shelburne's motion to dismiss, he purports to "enter[] nolle prosequi" as to this claim. (Doc. 67 at 11.) The term "nolle prosequi" refers to "legal notice that a lawsuit or prosecution has been abandoned." Black's Law Dictionary (10th ed. 2014). The court construes Plaintiff's statement as indicating his abandonment of this claim. Accordingly, Count Twelve is DISMISSED.

2

[C]omplaint may be served[.]" (Doc. 13 at 4.) The court granted an extension until October 23, 2017. Returns of service demonstrating service were filed.

On October 19, 2017, former Police Chief Warden, Officer McKnight, and Mr. Bohne moved to dismiss the original Complaint pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process on the grounds Plaintiff failed to accomplish service within ninety days of commencing the action. They further asserted that Plaintiff's Complaint failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). On October 23, 2017, Shelburne filed a supplemental motion to dismiss the Complaint and Amended Complaint, "in response to Plaintiff's service of his Complaint to the Town[,]" under Fed. R. Civ. P. 12(b)(6). (Doc. 29 at 1 n.1.) On November 17, 2017, Plaintiff responded to these filings with a motion for leave to amend his original Complaint and to withdraw the "improperly filed first [A]mended [C]omplaint." (Doc. 30 at 1.)

On March 26, 2018, the court issued an Entry Order granting Plaintiff leave to amend his Complaint and denying as moot Defendants' motions to dismiss. (Doc. 44.) Plaintiff's SAC was filed that same day. Defendants thereafter renewed their motions to dismiss for failure to state a claim upon which relief can be granted.

**II.     The SAC's Allegations.**

In the early morning hours of February 11, 2014, Plaintiff was driving a vehicle in Charlotte, Vermont when Defendant Officer McKnight allegedly "rushed upon" him at a high speed in a car with its headlights on high-beam. (Doc. 45 at 2, ¶¶ 10-11.) Officer McKnight followed Plaintiff for approximately 1.5 miles before effecting a traffic stop of Plaintiff's vehicle. Plaintiff asserts that a video of the pursuit, observation, and stop shows that Plaintiff adhered to all traffic laws and committed no traffic violations.

Officer McKnight informed Plaintiff that he stopped him for speeding and crossing the white fog line four times. After Plaintiff refused to perform dexterity exercises and submit to a preliminary breath test ("PBT"), Officer McKnight issued Plaintiff a speeding ticket and arrested and charged him DUI in violation of 23 V.S.A. § 1201(a)(2). Plaintiff alleges that although he did not resist arrest, as he exited his

3

vehicle, Officer McKnight allegedly "unnecessarily and forcibly twisted Plaintiff's arm behind his back in his effort to handcuff him." (Doc. 45 at 8, ¶ 58.) Plaintiff allegedly suffered bruising and a cut as a result. Plaintiff asserts he did not complain of the allegedly excessively tightened handcuffs because he was too afraid to do so. A second officer seat-belted Plaintiff in the patrol car.

Plaintiff alleges that, during the transport to the police station, he leaned forward in an effort to reduce the pain caused by the handcuffs. Officer McKnight asked him what he was doing and commanded him to "sit back and stay there[.]" *Id.* at 9, ¶ 68 (internal quotation marks omitted). Officer McKnight pumped the brakes as he said "sit down . . . sit down[.]" *Id.* ¶ 69 (internal quotation marks omitted). Plaintiff asked Officer McKnight: "or what?" *Id.* ¶ 70 (internal quotation marks omitted). Officer McKnight then abruptly stopped the patrol car, exited and opened Plaintiff's door, and asked Plaintiff if "he wanted to get tazed" to which Plaintiff responded "no." *Id.* ¶ 71 (internal quotation marks omitted). Officer McKnight stated there was a "safety issue" and Officer McKnight contacted another officer for "his cage[.]" *Id.* at 10, ¶ 78 (internal quotation marks omitted). Officer McKnight asked Plaintiff what he was reaching for and reported to dispatch that Plaintiff was being uncooperative. He told a second officer Plaintiff was standing up in his seat. Officer McKnight allegedly told Plaintiff "things can go very smoothly or very complicated, and you're making them as complicated as possible." *Id.* at 11, ¶ 84 (internal quotation marks omitted).

Plaintiff alleges that Officer McKnight's affidavit described Plaintiff's conduct as follows:

> While transporting [Plaintiff] to Shelburne Police Dept. for processing [Plaintiff] became unruly in the back seat of my uncaged cruiser. On two accounts he was seen trying to stand up in the backseat with his hands being pushed downward in what appeared to be an attempt to retrieve something from his waistline or slip his cuffs under his feet. He was moved to another cruiser with a protective barrier. As I was walking [Plaintiff] to the second cruiser [Plaintiff] swung his head and hit the open front passenger's cruiser door. He then asked why I had hit him or pushed him into the door. He then tried to do it to the rear door as well but I was able to prevent him from hurting himself anymore. When he was asked to

4

step into the cruise he told me to push him in. His behavior was extremely odd.

*Id.* at 8-9, ¶ 64.[2]

Plaintiff alleges that he was being "cooperative and not resistant as Defendant McKnight escorted him [and] was then suddenly shoved by Defendant McKnight into the open door as they passed it, striking Plaintiff[']s head and causing him injury and emotional distress." *Id.* at 11-12, ¶ 91. In response, Plaintiff asked "why did you do that to me? That's fucked up." *Id.* at 12, ¶ 92 (internal quotation marks omitted). Officer McKnight then allegedly "slammed Plaintiff's back up against the patrol SUV[,]" and said, "knock it off, alright, you're acting like an idiot, smacking yourself into the door[,]" to which Plaintiff responded, "I didn't do anything." *Id.* ¶¶ 93-95 (internal quotation marks omitted).

Plaintiff asked Officer McKnight for assistance entering the SUV, saying "help me, please, push me." *Id.* ¶ 96. When he was seated inside the vehicle, Plaintiff alleges Officer McKnight "told Plaintiff he tried to kick him." *Id.* ¶ 97. Plaintiff contends he "did not kick, or attempt to kick Defendant McKnight, and responded that 'I didn't kick you.'" *Id.* ¶ 98. While he was seat belting Plaintiff, Officer McKnight purportedly said to Plaintiff "if you want to act like a 2-year old we'll treat you like one" before transporting Plaintiff to the Shelburne Police Department for DUI processing. *Id.* ¶¶ 99-100 (internal quotation marks omitted).

On February 13, 2014, Officer McKnight forwarded his affidavit of probable cause to the State of Vermont's attorney. Plaintiff alleges Officer McKnight knowingly and intentionally fabricated material facts in the affidavit, including that Plaintiff was swerving, crossed the white fog line at least four times, and braked suddenly before crossing the center line as he made a right-hand turn. Plaintiff further alleges Officer McKnight "made allegations, attempting to paint Plaintiff as acting 'mad'" during the

---

[2] While Plaintiff purports to quote Officer McKnight's affidavit in the SAC, *see* Doc. 45 at 5, 7, ¶¶ 34, 47-50, he does not attach the affidavit to the SAC and it has not otherwise been submitted for the court's consideration.

encounter. *Id.* at 7, ¶ 50. Plaintiff asserts these allegations are untrue and that Officer McKnight lacked probable cause for the DUI charge. As a result of the DUI charge, Plaintiff's license to operate a motor vehicle was suspended for several months and he suffered a loss of his liberties by virtue of court-ordered conditions of release. Because Plaintiff was self-employed and relied on his ability to drive to operate his business, he alleges he suffered severe emotional distress.

On February 19, 2014, Plaintiff requested the video recording of the traffic stop in accordance with 23 V.S.A. § 1203(k). He alleges he received the video on March 6, 2014, after the ten-day statutory deadline for its production.

On April 9, 2014, the Vermont Superior Court held hearings on both Plaintiff's civil suspension and DUI charge.[3] In connection with Plaintiff's motion to suppress evidence and motion to dismiss, the state court reviewed the video recording of the February 11, 2014 traffic stop. At the hearing, Officer McKnight testified consistent with his affidavit. In an April 28, 2014 decision, Plaintiff asserts the state court noted its "concern[] that the cruiser video fail[ed] to corroborate much of Officer McKnight's testimony[.]" (Doc. 45 at 6-7, ¶ 46) (internal quotation marks omitted) (first alteration added). Specifically, the state court found Officer McKnight's testimony that he

---

[3] Shelburne has submitted Vermont Superior Court's Findings and Order and related filings. (Docs. 69-1, 69-2, 69-3.) In evaluating a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The court may also consider a document that is "integral to" the complaint, if the plaintiff relied on the terms and effect of that document in drafting the complaint, *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006), and may take "judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation[.]" *Id.* at 157. "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). "[I]t must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Because Plaintiff relies on the Vermont Superior Court's April 23, 2014 Findings and Order in his SAC, *see* Doc. 45 at 6-7, ¶¶ 46-54, and there is no dispute regarding its authenticity, it is properly before the court.

observed Plaintiff's vehicle swerving back and forth and making an abrupt right-hand turn and that Plaintiff's speech was mumbled and slurred was not corroborated by the cruiser video. The court, however, also found: "[a]ccording to the cruiser video, it took approximately 45 seconds to establish visual contact with the vehicle. Officer McKnight is certain that the vehicle he stopped was the same vehicle he observed speeding. The court so finds." (Doc. 69-3 at 2 (*State v. Beaudry*, No. 622-2-14 Cncr, No. 60-2-14 Cncs (Vt. Super. Ct. Apr. 23, 2014)).) The court noted that during the subsequent roadside encounter, Officer McKnight became "slightly more confrontational[,]" while Plaintiff was "polite and courteous with the officer." *Id.* at 2. The court found the cruiser video:

reveals that once [Plaintiff] declined the invitations to exit the car, take dexterity tests, and submit to a PBT [preliminary breath test], Officer McKnight became more aggressive with him. Officer McKnight advised [Plaintiff] that since he could smell alcohol and suspected him of drinking, going home was not going to happen. . . . Faced with the threat of arrest, [Plaintiff] agreed to submit to the PBT. . . . When [Plaintiff] failed to give a sufficient sample of breath, Officer McKnight asked [him] if he wanted "to blow or not." . . . When [Plaintiff] refused to submit to the PBT, Officer McKnight opened the driver's door and began to physically remove [Plaintiff] from the vehicle. [Plaintiff] did not resist, but faced with the prospect of arrest for the second time, he agreed to submit to the PBT again.

(Doc. 69-3 at 3-4.) After several more attempts to administer the PBT, Plaintiff was arrested and transported to the Shelburne Police Department for DUI processing. The Vermont Superior Court made no rulings that Officer McKnight physically assaulted Plaintiff or that Plaintiff sustained any injuries in the course of his arrest. At the police station, Officer McKnight contacted the on-call Public Defender. After consulting with both the Public Defender and his private attorney, Plaintiff agreed to submit an evidentiary breath sample which reflected a blood alcohol content ("BAC") of .130 at 3:31 a.m. Vermont law prohibits operating a motor vehicle on a public highway with a blood alcohol content of .08 or greater. *See* 23 V.S.A. § 1201(a)(1). Plaintiff was cited and released.

The Vermont Superior Court held:

While the court is concerned that the cruiser video fails to corroborate much of Officer McKnight's testimony, the court is satisfied that reasonable suspicion for the stop existed as a result of the speeding violation. . . . After carefully reviewing the officer's testimony and cruiser video, the court concludes that the State has not met its burden to establish the validity and justification for the exit orders. The court recognizes that in the vast majority of traffic stops, drivers readily agree to do what the officer asks. Submission to authority, couched in terms of "requests" to do things, is natural. It is rare to come across someone who understands his legal rights and declines repeated "requests" to perform roadside tests "that will only help him." This is such a case. The original justification for the stop was speeding and erratic operation, but . . . the video does not corroborate the erratic operation described by the officer. Momentary touching of a fog line is not a traffic violation. Moreover, the video confirms that [Plaintiff] was polite and courteous while invoking his right not to submit to dexterity or PBT tests. It was the officer, not [Plaintiff], who grew more aggressive as the process unfolded. At best, the exit order was based on a slight odor of alcohol and a speeding violation. The sole reason [Plaintiff] agreed to submit to the PBT was the clear threat that a failure to submit to the test would result in his arrest. Suffice it to say, at the time the threat was made, there was no probable cause for any arrest. . . . Based on the credible and objective facts and circumstances, the court concludes that there was insufficient reasonable suspicion to justify the exit order. Accordingly, all evidence obtained following the unlawful exit order must be suppressed. . . . Apart from the unlawful exit order, there was no probable cause to arrest [Plaintiff] for DUI.

(Doc. 69-3 at 6-7.)[4] Because the Vermont Superior Court granted the motion to suppress, the State of Vermont could not use Plaintiff's evidentiary breath test result in the civil suspension proceeding and thus the court held that "the State has not met its burden of establishing, by a preponderance of the evidence, each element of 23 V.S.A. § 1205(h)(1)(A) through (E)." *Id.* at 7. Judgment was entered for Plaintiff in the civil suspension hearing. In the criminal case, Plaintiff's motion to dismiss was granted.

---

[4] Under Vermont law, "the test to determine whether an exit order was justified under Article 11 [of the Vermont Constitution] is whether the objective facts and circumstances would support a reasonable suspicion that the safety of the officer, or of others, was at risk or that a crime has been committed." *State v. Sprague*, 2003 VT 20, ¶ 16, 175 Vt. 123, 129, 824 A.2d 539, 545. The *Sprague* court identified a need "to investigate a suspected crime" as justification for an exit order. *Id.* ¶ 20, 175 Vt. at 130, 824 A.2d at 546.

On November 20, 2014, Plaintiff appeared at a hearing before the Vermont Judicial Bureau contesting the citation for a speeding violation. The hearing officer ruled against Plaintiff who appealed the decision. Plaintiff alleges the speeding citation "ultimately terminated in [his] favor when the State declined to pursue the charge through jury trial and dismissed the ticket." (Doc. 45 at 14, ¶ 118.)

Finally, Plaintiff alleges that the Shelburne Police Department had an "internal, public award program for most motor vehicle stops and DUI[s.]" *Id.* at 21, ¶ 161. He asserts this program led to the violation of his constitutional rights when Officer McKnight stopped him in February 2014. Plaintiff alleges Defendant Warden, the Shelburne Chief of Police at the time, sanctioned the program and required his officers to perform more traffic stops. He further alleges Shelburne was on notice of the unconstitutional actions of its officers when Wallace Nolen of Barre, Vermont informed the Shelburne Selectboard at an August 2013 meeting that there seemed to be a pattern of "the issuance of 'bogus' tickets by Shelburne police officer[s.]" *Id.* at 18, ¶ 140. He alleges that Officer Lawton was the subject of a civil rights claim filed by Roderick MacIver in the United States District Court in September of 2013 and sets forth facts regarding that incident in the SAC.

## III.  Conclusions of Law and Analysis.

In adjudicating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all of the allegations contained in a complaint" and determine whether the complaint states a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

A court must liberally construe a complaint filed by a self-represented litigant because it "must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ahlers v. Rabinowitz*,

684 F.3d 53, 60 (2d Cir. 2012) (noting a document filed by a self-represented litigant must be liberally construed). While "lenity . . . must attend the review of *pro se* pleadings[,]" *Harris v. Mills*, 572 F.3d 66, 68 (2d Cir. 2009), self-represented litigants nevertheless must satisfy the plausibility standard set forth in *Iqbal* and Fed. R. Civ. P. 8 and 12(b)(6).

### A.     Shelburne's Motions to Dismiss under 24 V.S.A. § 901a.

Shelburne moves to dismiss all claims against it as well as those against its employees and officers "to the extent it is obligated to stand in the place of its employees under 24 V.S.A. § 901a." (Doc. 48 at 2.)

Section 901a provides, in pertinent part:

> (b) When the act or omission of a municipal employee acting within the scope of employment is alleged to have caused damage to property, injury to persons, or death, the exclusive right of action shall lie against the municipality that employed the employee at the time of the act or omission; and no such action may be maintained against the municipal employee[;]

> (c) When a municipality assumes the place of a municipal employee in an action as provided in subsection (b) of this section, the municipality may assert all defenses available to the municipal employee, and the municipality shall waive any defense not available to the municipal employee, including municipal sovereign immunity.

24 V.S.A. § 901a(b)-(c). "[F]alse arrest, malicious prosecution, and intentional infliction of emotional distress are all properly classified as intentional torts." *Simuro v. Shedd*, 176 F. Supp. 3d 358, 373 (D. Vt. 2016). Because the protection afforded to municipal employees under § 901a(b) does not extend "to an act or omission . . . that was willful, intentional, or outside the scope of the employee's authority[,]" *id.* § 901a(e),[5] Shelburne does not stand in the place of individual Defendants Officer McKnight, former Chief of Police Warden, or former Town Manager Bohne with regard to Plaintiff's intentional tort

---

[5] Plaintiff does not allege whether Defendant Bohne, as Shelburne Town Manager, or Defendant Warden, as Shelburne's Chief of Police, was an appointed or elected municipal officer. Vermont law provides that actions brought against "any appointed or elected municipal officer" shall be brought against the municipality, and that "[t]he municipality shall assume all reasonable legal fees incurred by an officer when the officer was acting in the performance of his or her duties and did not act with any malicious intent." 24 V.S.A. § 901.

claims. Those claims therefore may be brought against those individual employees, but not against their employer. As a result, Plaintiff's claims against Shelburne for unlawful arrest, malicious prosecution, fabrication of evidence, assault, battery, and excessive force are DISMISSED.

## B. Plaintiff's Section 1983 Claim for Unlawful Seizure.

In Count One, Plaintiff asserts a § 1983 claim against Officer McKnight for unlawful seizure under the Fourth and Fourteenth Amendments. Specifically, he alleges that Officer McKnight lacked "reasonable suspicion" for the traffic stop. (Doc. 45 at 22, ¶ 169.) Defendants argue that Officer McKnight had a reasonable suspicion for the stop and, even if reasonable suspicion was lacking, that Officer McKnight is entitled to qualified immunity.

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State[,] . . . subjects, or causes to be subjected . . . [any] person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . or other proper proceeding for redress[.]

42 U.S.C. § 1983. The statute is "not itself a source of substantive rights" but rather provides "a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 43 U.S. 137, 144 n.3 (1979)). To prevail on a claim under § 1983, a plaintiff "must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). It is well settled that § 1983 "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). Shelburne does not dispute that Officer McKnight was acting under color of state law.

"The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity or a traffic violation." *United States v. Diaz*, 802 F.3d 234, 238 (2d Cir. 2015) (internal quotation marks omitted). Though a "mere hunch" is insufficient, the "reasonable suspicion" standard requires "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (internal quotation marks and citation omitted). A reasonable suspicion requires "some minimal level of objective justification[.]" *Diaz*, 802 F.3d at 239 (internal quotation marks omitted). The objective inquiry asks "whether a reasonable officer would suspect unlawful activity under the totality of the circumstances" and disregards the officer's subjective motivation. *Id.* ("The objective reasonableness of an officer's suspicion preceding any given traffic stop depends on the totality of the circumstances leading to *that* stop and on the traffic law at issue.").

Plaintiff alleges he did not cross the white fog line and was not speeding. The Vermont Superior Court, however, held that it was "satisfied that reasonable suspicion for the stop existed as a result of the speeding violation." (Doc. 69-3 at 6.) Plaintiff cannot avoid this finding by making allegations to the contrary. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (noting that a court need not accept the truth of a plaintiff's allegations when they are contradicted by documents attached to the complaint); *see also Gene Codes Forensics, Inc. v. City of New York*, 2012 WL 1506166, at *3 (S.D.N.Y. Apr. 26, 2012) ("[A]t th[e motion to dismiss stage,] . . . if the allegations are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference.") (internal quotation marks omitted). Because Officer McKnight had a reasonable suspicion that Plaintiff was speeding, the traffic stop was not in violation of the Fourth Amendment. Plaintiff has therefore failed to state a § 1983 claim against Officer McKnight for an unlawful traffic stop. Count One for an unlawful seizure is therefore DISMISSED against all Defendants.

## C.  Plaintiff's Fabrication of Evidence Claim.

Plaintiff alleges Officer McKnight created a false affidavit "that resulted in the deprivation of Plaintiff[']s right[]s and liberty, including the loss of his license to drive and court[-]ordered conditions of his release[.]" (Doc. 45 at 22, ¶ 170.) Defendants assert that Plaintiff has failed to allege sufficient facts to state a plausible claim for fabrication of evidence.

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial[.]" *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).  To state a claim for fabrication of evidence, Plaintiff must allege: "an (1) investigating official (2) fabricate[d] evidence (3) that is likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of [life, liberty, or property] as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016).

Plaintiff alleges that Officer McKnight, an investigating official, included certain information in his affidavit that was forwarded to prosecutors regarding Plaintiff's operation of his vehicle that was substantially contradicted by the cruiser video and that was therefore allegedly fabricated.[6]  In particular, Plaintiff claims he was not operating erratically and that although the court found that his vehicle touched the fog line, it did not find that it crossed it.  Because the Vermont Superior Court's suppression of evidence does not apply in this case, Plaintiff's suppressed evidentiary breath test result may be considered in determining whether Plaintiff plausibly alleges that Officer McKnight fabricated evidence in support of a DUI charge.  *See Townes v. City of New York*, 176

---

[6] In *State v. Freeman*, the Vermont Supreme Court acknowledged that indicia of intoxication such as the odor of alcohol and watery or bloodshot eyes are not likely to be corroborated by a cruiser video. 2004 VT 56, ¶ 8, 177 Vt. 478, 480, 857 A.2d 295, 298 (noting the lower court "refused to substitute its judgment of the events captured in the tape for the trooper's testimony, which the court found credible.  Given the inherent difficulty in evaluating demeanor, mannerisms, and tone of voice, in addition to the quality of testimony itself, we defer to the factfinder's determination of the credibility of the witness, and the persuasive effect of his testimony").

F.3d 138, 145 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine . . . is inapplicable to civil § 1983 actions."); *see also Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963) (stating the fruit of the poisonous tree doctrine is an evidentiary rule that operates in the context of criminal procedure). A jury would thus be entitled to consider Plaintiff's BAC as well as his refusal to submit to a PBT and dexterity exercises. By statute, motorists in Vermont give "implied consent" to provide an evidentiary breath sample for testing. 23 V.S.A. § 1202(a). While the statute grants a motorist the right to refuse the test, the refusal may be introduced in a subsequent criminal proceeding. *Id.* § 1202(b). Against this backdrop, it is not plausible that the allegedly fabricated evidence of Plaintiff's crossing the fog line and uncooperative behavior would influence a jury's decision whether to convict or acquit Plaintiff of DUI.

Because Plaintiff has not plausibly alleged the essential elements of a fabrication of evidence claim, that claim is DISMISSED against all Defendants.

### D. Plaintiff's § 1983 Unlawful Arrest Claim.

A claim for false arrest under § 1983 requires a plaintiff to allege that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam) (internal quotation marks omitted). A false arrest claim action under Vermont law contains these same elements. *See Connary v. Field*, No. 12-276, slip op. at 3 (Vt. Feb. 14, 2013) (requiring proof the defendant "intended to confine plaintiff without plaintiff's consent, and that confinement was not otherwise privileged").

Probable cause is a complete defense to a claim of false arrest.[7] *Ackerson*, 702 F.3d at 19. Probable cause exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person

---

[7] This is because probable cause to arrest constitutes justification. *See Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff[.]").

14

of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017) (internal quotation marks omitted).

Whether probable cause exists depends on the "totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Probable cause need only be shown for one of the charged offenses, even if a plaintiff was arrested for more than one offense. *See Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012) ("A Fourth Amendment claim turns on whether probable cause existed to arrest for any crime, not whether probable cause existed with respect to each individual charge.").

The Vermont Superior Court ruled that Officer McKnight lacked probable cause to arrest Plaintiff because at the time of the traffic stop, Plaintiff had refused both a PBT and dexterity exercises and the court refused to credit Officer McKnight's observations regarding indicia of intoxication. *See* Doc. 69-3 at 7 ("Apart from the unlawful exit order, there was no probable cause to arrest [Plaintiff] for DUI."). In doing so, the Vermont Superior Court properly did not consider the suppressed evidentiary BAC test. Based on this evidence, Plaintiff has plausibly alleged that there was no probable cause for his arrest. However, under federal law, if probable cause is lacking, a law enforcement officer acting under the color of state law may still be entitled to qualified immunity if there is arguable probable cause. *See Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) ("Even where a reviewing court[] . . . concludes that probable cause to arrest was lacking in a given case, an officer will still be entitled to qualified immunity . . . if he can establish that there was arguable probable cause to arrest.") (internal quotation marks omitted). This is because "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (observing that qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").

"Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). "In other words, an officer is entitled to qualified immunity unless no officer of reasonable competence could have made the same choice in similar circumstances." *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017) (internal quotation marks omitted).

The Vermont Superior Court found that Officer McKnight permissibly stopped Plaintiff's vehicle because it was speeding. It further found that Plaintiff's vehicle touched the fog line but did not find this sufficient evidence of erratic driving. Although Plaintiff denies Officer McKnight's observations that Plaintiff emitted an odor of alcohol, the Vermont Superior Court acknowledged the potential existence of this evidence. *See* Doc. 69-3 at 7 ("At best, the exit order was based on a slight odor of alcohol and a speeding violation.").[8] Plaintiff did not submit to a PBT or dexterity exercises, which is evidence probative of guilt. *See State v. Blouin*, 716 A.2d 826, 828 (Vt. 1998) ("Evidence that a motorist refused to perform a sobriety test is probative of guilt, and therefore relevant.").

Because officers of reasonable competence could differ as to whether there was probable cause for Plaintiff's arrest based on his speeding, indicia of intoxication, and refusal to submit to a dexterity test and a PBT, arguable probable cause exists. Officer McKnight is therefore entitled to qualified immunity and Plaintiff's false arrest claim against him is DISMISSED.

---

[8] In determining whether there is arguable probable cause, a jury would also be entitled to consider evidence that the Vermont Superior Court's conclusion that the exit order was unlawful was in error. In *State v. Freeman*, 2004 VT 56, 177 Vt. 478, 857 A.2d 295, the Vermont Supreme Court upheld an exit order even though the trial court "conceded that it was difficult to corroborate the trooper's observations" from the cruiser videotape based on the police officer's notation on a pre-printed DUI processing form that the defendant had "very slight" slurred speech. *Id.* ¶¶ 5, 9, 177 Vt. at 480-81, 857 A.2d at 297-98.

## E.    Plaintiff's § 1983 Malicious Prosecution Claim.

To state a § 1983 claim for malicious prosecution, Plaintiff must allege "a seizure or other perversion of proper legal procedures implicating his personal liberty and privacy interests under the Fourth Amendment[,]" as well as that "criminal proceedings were initiated or continued against him, with malice and without probable cause, and were terminated in his favor." *Lanning v. City of Glens Falls*, 908 F.3d 19, 24 (2d Cir. 2018) (internal quotation marks and alterations omitted). State tort law may "serve[] only as a source of persuasive authority . . . in defining the[] elements" of the claim. *Id.*

Under Vermont law, a claim of malicious prosecution requires Plaintiff to plausibly allege: "a party instituted a proceeding against the individual without probable cause, that the party did so with malice, that the proceeding terminated in that individual's favor, and that the individual suffered damages as a result of the proceeding." *Siliski v. Allstate Ins. Co.*, 811 A.2d 148, 151 (Vt. 2002). "[I]f the dismissal somehow indicates that the [plaintiff] is innocent of wrongdoing, it will be considered a favorable termination. On the other hand, if the reason for dismissal is not inconsistent with a [plaintiff's] wrongdoing, it will not be considered a favorable termination." *Id.* at 151-52 (internal quotation marks and citation omitted).

Plaintiff was charged with DUI in violation of 23 V.S.A. § 1201(a)(2). In order to allege a claim of malicious prosecution, Plaintiff must plausibly allege that Officer McKnight rather than the state's attorney initiated the charges against him. *See* 24 V.S.A. § 361(a) ("A State's Attorney shall prosecute for offenses committed within his or her county, and all matters and causes cognizable by the Supreme and Superior Courts on behalf of the State"). Under Vermont law, an individual police officer cannot institute a criminal proceeding. Even if Plaintiff could overcome this hurdle, he must further plausibly allege that the proceeding terminated in his favor. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."). In the Second Circuit, "affirmative indications" of innocence are required to plausibly allege the "favorable termination" element. *Lanning*, 908 F.3d at 25 ("Our

prior decisions requiring affirmative indications of innocence to establish 'favorable termination' therefore continue to govern § 1983 malicious prosecution claims[.]'").

Because the Vermont Superior Court granted Plaintiff's motion to suppress, and all evidence obtained following the unlawful exit order was suppressed, the DUI charge was dismissed for lack of evidence. There was no affirmative finding that Plaintiff was innocent of any wrongdoing or that he had not in fact operated his vehicle on a public highway under the influence of alcohol. Dismissal for lack of evidence following a successful suppression motion is not a "favorable termination" for malicious prosecution purposes. *See Margheim v. Buljko*, 855 F.3d 1077, 1089 (10th Cir. 2017) ("Dismissal of the Drug Case was not a favorable termination for malicious prosecution purposes. . . . Dismissal based on the suppression of evidence on technical grounds having no or little relation to the evidence's trustworthiness is not favorable") (internal quotation marks omitted); *see also Dobiecki v. Palacios*, 829 F. Supp. 229, 235-36 (N.D. Ill. 1993) (noting "if the evidence was only suppressed on 'technical' grounds having little or no relation to the evidence's trustworthiness, then the fact that there was not other sufficient evidence would not be indicative of innocence").

Because Plaintiff has not plausibly alleged a malicious prosecution claim, this claim against all Defendants must be DISMISSED.

### F. Plaintiff's Excessive Force Claim.

In Count Five, Plaintiff asserts "Defendant McKnight intended to unlawfully use force against Plaintiff and that force caused Plaintiff to suffer pain and injury violating the Fourth Amendment[.]" (Doc. 45 at 23, ¶ 173.) With the exception of bruising and a cut from the handcuffs, Plaintiff does not specify the type of injury he sustained. The court construes his claim as one for excessive force under § 1983.

"Whether the force used to effect an arrest is 'reasonable' or 'excessive' turns on 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake.'" *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Among other things, the court must consider "the need for the

18

application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline[.]" *Id.* (internal quotation marks omitted). "The subjective motivations of the individual officers have no bearing on whether a particular seizure is unreasonable under the Fourth Amendment." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2012) (internal quotation marks and alterations omitted). The court must make "allowance[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

Plaintiff alleges handcuffs were "excessively-tightened" and caused him to suffer bruising and a cut. (Doc. 45 at 8-9, ¶¶ 59, 67.) "[T]ight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *See Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008).

Plaintiff further alleges that he did not complain about the excessively tight handcuffs or notify the officers of his injuries. Because Plaintiff did not bring his condition to Officer McKnight's attention, there is no allegation that it was deliberately ignored. It would be unreasonable to find a plausible claim of a Fourth Amendment violation in such circumstances. *See Davis v. Rodriguez*, 364 F.3d 424, 436 (2d Cir. 2004) ("The Supreme Court has explained that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard'") (internal quotation marks omitted).

Plaintiff further alleges that he was cooperative as he was led to the second patrol car but was "suddenly shoved by Defendant McKnight into the open door as they passed it, striking Plaintiff[']s head and causing him injury[.]" *Id.* at 11-12, ¶ 91. He alleges that he stated: "why did you do that to me? That's fucked up." *Id.* at 12, ¶ 92 (internal quotation marks omitted). Officer McKnight allegedly told Plaintiff: "knock it off, alright, you're acting like an idiot, smacking yourself into the door." *Id.* ¶ 94 (internal quotation marks omitted). Plaintiff denied this and asked Officer McKnight "help me,

please, push me." *Id.* ¶ 96. The two then allegedly discussed whether Plaintiff had attempted to or actually kicked Officer McKnight which Plaintiff denied.

Plaintiff contends he suffered an unspecified injury as a result of Officer McKnight's striking Plaintiff's head against an open cruiser door and slamming Plaintiff's back against the cruiser. Even minor injuries can support an excessive force claim if the force in question was unreasonable. *See Maxwell v. City of New York*, 380 F.3d 106, 108-10 (2d Cir. 2004) (affirming district court's decision which "permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising[.]"). However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted).

Even if a § 1983 claim of excessive force is plausibly alleged, Officer McKnight may be entitled to qualified immunity if the right at issue was not clearly established. Use of excessive force is an area of the law "in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (internal quotation marks omitted). A defendant police officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014).

Arguably, the Supreme Court's most recent decisions have required an even closer match between the facts at issue and controlling precedent for the "clearly established" prong to apply. In *White v. Pauly*, the Court held that the defendant officer who fatally shot an individual without first providing a warning after the officer "arrived late at an ongoing police action and . . . witnessed shots being fired by one of several individuals in a house surrounded by other officers" did not violate clearly established law, noting that the Tenth Circuit "failed to identify a case where an officer acting under similar

circumstances as [the defendant officer] was held to have violated the Fourth Amendment." 137 S. Ct. 548, 549, 552 (2017) (per curiam). In *Kisela v. Hughes*, in deciding whether a police officer engaged in excessive force when he used deadly force to kill a woman exhibiting erratic behavior with a knife, the Court concluded that "[t]his [was] far from an obvious case in which any competent officer would have known" that the use of deadly force violated the Fourth Amendment, 138 S. Ct. at 1153, and because "not one of the decisions relied on by the [Ninth Circuit]" squarely governed the specific facts at issue, the Court held that the officer did not violate clearly established law. *Id.* at 1154.

A clearly established right is sufficiently clear when every reasonable official would have understood that what he or she is doing violates that right. *Reichle*, 566 U.S. at 664. Plaintiff points to no controlling precedent establishing that deliberate shoving in the course of an arrest without causing any specified temporary or permanent injury rises to the level of a Fourth Amendment violation. *Cf. Maxwell*, 380 F.3d at 109-10 (reversing grant of summary judgment in favor of police officer on excessive force claim where plaintiff was shoved into a police car and suffered pain, bumps, bruises, and post-concussive syndrome). In the absence of an allegation of a temporary or permanent injury that is not *de minimis*, reasonable officers could differ as to whether the shoving in this case violates the Fourth Amendment. *See Figueroa*, 825 F.3d at 105 (noting in conducting the balancing test to determine whether the force used to effect an arrest is reasonable or excessive, the court must consider "the extent of injury inflicted") (internal quotation marks omitted). Emotional distress without a corresponding physical injury is unlikely to suffice. *See Warren v. Ewanciw*, 2019 WL 589488, at *9 (S.D.N.Y. Feb. 13, 2019) ("[E]motional distress unaccompanied by any physical injury has been held to be insufficient to support a claim for excessive force") (internal quotation marks omitted); *see also Gonzalez v. Bronx Cty. Hall of Justice Court Officer Mark Hirschman Shield 7421*, 2017 WL 435829, at *4 (S.D.N.Y. Jan. 31, 2017) (granting summary judgment in officer's favor where plaintiff "expressly disavowed any physical injury from the incident, stating that her claims are limited to garden variety emotional distress and

include no physical injury" on the basis that plaintiff's injury "was *de minimis* and, therefore, insufficient to support a claim of excessive force") (internal quotation marks omitted). Because Plaintiff has not plausibly alleged an excessive force claim, Defendants' motions to dismiss Plaintiff's excessive force claim are GRANTED.

### G. Plaintiff's Claim for Violation of Due Process.

In Count Six, Plaintiff alleges an unknown employee of Shelburne violated his Fifth and Fourteenth Amendment rights by not timely delivering a copy of the video of the February 11, 2014 stop in violation of 23 V.S.A. § 1203(k). He asserts his damages were exacerbated by the violation because the time he was without his driver's license and other restrictions on his liberty were prolonged.

"The Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials." *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) (internal quotation marks omitted). Because Plaintiff's allegations are not directed to federal government actors, his Fifth Amendment due process claims must be DISMISSED against all Defendants.

Even if Plaintiff could plausibly allege a municipal employee deprived him of timely production of the cruiser video, "a public official's failure to follow state law . . . is not equivalent to a federal constitutional injury." *Tallman v. City of Chautauqua*, 335 F. App'x 92, 94 (2d Cir. 2009). Such a claim is "properly pursued in state court." *Id.* at 94; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). Plaintiff's Fourteenth Amendment due process claims against all Defendants are DISMISSED.

### H. Plaintiff's Claim against Defendant Bohne.

Plaintiff alleges Defendant Bohne, in his capacity as a Shelburne policymaker, deliberately supported and allowed performance-based award and reward incentive programs for a purpose other than the administration of justice which led to the violations of Plaintiff's constitutional rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

22

With regard to Plaintiff's claims under the Fourth and Fourteenth Amendments, "[t]o establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *see also Iqbal*, 556 U.S. at 667 ("In a § 1983 suit . . . the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Prior to the Supreme Court's decision in *Ashcroft v. Iqbal*, the Second Circuit required a plaintiff to plausibly allege one or more of the following categories for supervisory liability under § 1983:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [persons] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). A plaintiff must also demonstrate "an affirmative causal link between the supervisor's inaction and [his or] her injury." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

"The Second Circuit has recognized that, in light of *Iqbal*, not all of the *Colon* factors may have survived, but it has yet to definitively identify which factors remain applicable." *Kucera v. Tkac*, 2013 WL 1414441, at *4 (D. Vt. Apr. 8, 2013) (citing *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012)).[9] The "majority view" of the district courts in the Second Circuit is that "the five *Colon* categories supporting personal liability of supervisors still apply as long as they are consistent with the requirements

---

[9] *See also Shaw v. Prindle*, 661 F. App'x 16, 18 n.2 (2d Cir. 2016) (noting that *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[]" but declining to "reach *Iqbal*'s impact on *Colon* in this case"); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (same).

applicable to the particular constitutional provision alleged to have been violated." *Id.*
at \*5 (collecting cases) (internal quotation marks omitted).

Because Plaintiff fails to allege Defendant Bohne's personal involvement in any
alleged Fourth Amendment violations, his claim against Defendant Bohne must be
DISMISSED.

## I. Plaintiff's *Monell* Claims against the Town of Shelburne and Individual Capacity Claim against Defendant Warden.

In Counts Eight and Nine, Plaintiff asserts § 1983 claims against Defendant
Warden, former Shelburne Police Chief, and against Shelburne based on allegations of
incentive-based performance award and reward programs. (Doc. 45 at 24-26, ¶¶ 176-77.)
Plaintiff alleges Defendant Warden was a "top policy maker" for Shelburne's police
department and, in that capacity, he created and sanctioned the reward programs. *Id.* at
24-25, ¶ 176. Plaintiff further asserts that Shelburne, through these reward programs,
"continued a municipal policy, custom or usage that was deliberately indifferent to
citizen motorist's and other['] s [constitutional] right[]s[.]" *Id.* at 26, ¶ 177.

Under § 1983, "local governments are responsible only for their *own* illegal acts[;]
. . . [t]hey are not vicariously liable under § 1983 for their employees' actions." *Connick
v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks and citations omitted)
(concluding municipalities can be held liable "if the governmental body itself subjects a
person to a deprivation of rights or causes a person to be subjected to such deprivation").
A municipality may be liable under § 1983 only "if the deprivation of the plaintiff's
rights under federal law is caused by a governmental custom, policy, or usage of the
municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell
v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). "Absent such a custom, policy, or
usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of
its employee." *Id.* The plaintiff therefore must plead "three elements: (1) an official
policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a
constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)
(internal quotation marks omitted). "Official municipal policy includes the decisions of a

government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. Because Plaintiff has failed to plausibly allege a denial of a constitutional right, his *Monell* claim at this point cannot proceed.

Even if Plaintiff could plausibly allege a constitutional violation, he must further allege a causal link between Shelburne's alleged incentive and reward programs and his alleged injuries. This is because the "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("Although *City of Canton* addressed a claim of a failure to train, the stringent causation . . . requirement[] set out in that case ha[s] been applied to a broad range of . . . claims."). "[A] municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *City of Canton*, 489 U.S. at 389 (quoting *Monell*, 436 U.S. at 694 and *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981)).

Assuming without deciding that Plaintiff has adequately alleged the existence of a municipal policy, *see Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003) ("In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom'"), because the Vermont Superior Court ruled it was "satisfied that reasonable suspicion for the stop existed as a result of the speeding violation[,]" (Doc. 69-3 at 6), Plaintiff has not plausibly alleged the traffic stop was caused by Shelburne's policy of conducting "bogus" DUI stops. (Doc. 45 at 18, ¶ 140(e)); *see Zahrey v. Coffey*, 221 F.3d 342, 350 (2d Cir. 2000) (describing causation as an element of municipality liable under § 1983). Plaintiff's claims for municipal liability against Shelburne and for liability of a supervisory official under § 1983 against Defendant Warden in his individual capacity are therefore be DISMISSED.

## J. Plaintiff's Abuse of Process Claim.

In Count Ten, Plaintiff alleges a claim for abuse of process arising from Officer McKnight's affidavit that allegedly contained false information. To state a § 1983 claim for abuse of process, a plaintiff must plausibly allege "the defendants had an improper *purpose* in instigating the action and that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014) (internal quotation marks and alterations omitted). Under Vermont law, a plaintiff "alleging abuse of process must demonstrate 1) an illegal, improper or unauthorized use of a court process; 2) an ulterior motive or an ulterior purpose; and 3) resulting damage to the plaintiff." *Weinstein v. Leonard*, 2015 VT 136, ¶ 22, 200 Vt. 615, 625, 134 A.3d 547, 554-55 (internal quotation marks omitted).

Plaintiff alleges that Officer McKnight acted for his "benefit and ulterior and collateral objectives beyond plaintiff's criminal prosecution, and that caused plaintiff a loss of his liberties, as well as monetary and emotional damages[.]" (Doc. 45 at 27, ¶ 178.) This vague allegation is insufficient under *Iqbal* and *Twombly*. Even if it were sufficient, Plaintiff does not plausibly allege that Officer McKnight used the court process illegally, improperly, or without authorization. When Officer McKnight forwarded his affidavit in support of probable cause to the prosecuting attorney, Plaintiff had provided an evidentiary blood alcohol test well in excess of the legal limit. There was also uncontested evidence that Plaintiff had operated a vehicle on a public highway immediately prior to the stop. Under Vermont law, it was the state's attorney, not Officer McKnight, who charged Plaintiff and initiated the court process. *See* 24 V.S.A. § 361(a). Plaintiff makes no allegation that the state's attorney acted in concert with Officer McKnight in engaging in an illegal, improper, or unauthorized use of a court process. Plaintiff thus fails to plausibly allege the essential elements of an abuse of process claim and this claim against Officer McKnight is DISMISSED.

## K. Plaintiff's § 1983 Conspiracy Claim.

In Count Eleven, Plaintiff alleges the Defendants conspired to subject motorists to unlawful seizures in violation of the Constitution. To state a § 1983 conspiracy claim, a

plaintiff must allege "(1) an agreement between two or more state actors . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

In support of his conspiracy claim, Plaintiff alleges the Defendants "engaged in all of the overt acts alleged in this complaint[.]" (Doc. 45 at 27, ¶ 180.) The SAC alleges Defendant Warden informed the Shelburne Selectboard "we're pushed by the Federal government to get all the DUI[]s we could, and all the motor vehicle stops we could[.]" *Id.* at 19, ¶ 150. Even assuming an agreement between Defendants, without specific allegations of overt acts done in furtherance of the alleged conspiracy and a plausible allegation of a constitutional violation, Plaintiff's § 1983 conspiracy claim must be DISMISSED. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (internal quotation marks omitted).

**L.     Plaintiff's Claim for Intentional Infliction of Emotional Distress.**

In Count Thirteen, styled as a claim for "Outrageous Conduct," Plaintiff alleges "[b]y their intentional acts and omissions, the Defendants acted outrageously and caused Plaintiff to suffer severe emotional distress." (Doc. 45 at 28, ¶ 185.) The court construes this as a state-law claim for intentional infliction of emotional distress ("IIED").

In Vermont, a claim for IIED requires Plaintiff allege conduct that (1) is "extreme and outrageous," (2) is "intentional or reckless," and (3) "causes severe emotional distress." *Baptie v. Bruno*, 2013 VT 117, ¶ 24, 195 Vt. 308, 318, 88 A.3d 1212, 1219 (internal quotation marks omitted). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." *Denton v. Chittenden Bank*, 655 A.2d 703, 706 (Vt. 1994) (internal quotation marks and alterations omitted). "The test is objective; the plaintiff must show that the harm resulting from the inflicted distress was so severe that no reasonable person could be expected to endure it." *Farnum v. Brattleboro Retreat, Inc.*, 671 A.2d 1249, 1256 (Vt. 1995). The Vermont Supreme Court

has "declined to find outrageous conduct based solely on the alleged illegal motives underlying the conduct[.]" *Fromson v. State*, 2004 VT 29, ¶ 18, 176 Vt. 395, 402, 848 A.2d 344, 349.

Plaintiff's bare allegation that "[b]y their intentional acts and omissions, the Defendants acted outrageously and caused Plaintiff to suffer severe emotional distress[,]" (Doc. 45 at 28, ¶ 185), contains insufficient factual content to allow the court to infer any Defendant is liable for the intentional infliction of emotional distress. Simply stating the elements of the tort is insufficient. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (noting allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal).

Because Plaintiff is self-represented and the court must read his SAC liberally and to construe it to raise the strongest arguments it suggests, *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (per curiam) (instructing a reviewing court to afford "special solicitude" to self-represented litigants), Plaintiff's allegations may be construed as claiming Officer McKnight caused him an unspecified injury when Plaintiff was slammed into the open door and back of a police cruiser after Officer McKnight had wrongfully accused Plaintiff of uncooperative conduct. Although a close question, without additional factual content, the alleged conduct does not satisfy the exacting standard required for an IIED claim under Vermont law. *See Dulude v. Fletcher Allen Health Care, Inc.*, 807 A.2d 390, 398 (Vt. 2002) ("[W]hether a jury could reasonably find that the conduct at issue meets this test[]" is a "threshold question" for "the court to determine[.]"); *see also Soojung Jang v. Trs. of St. Johnsbury Acad.*, 331 F. Supp. 3d 312, 328 n.11 (D. Vt. 2018) (dismissing IIED clam under Vermont law at pleading stage); *Hovey v. Vermont*, 2017 WL 2167123, at \*9-10 (D. Vt. May 16, 2017) (noting the "allegations in this case, taken as true, fall short of establishing outrageous conduct" and dismissing at the pleading stage). Plaintiff's IIED claim is therefore DISMISSED against all Defendants.

**M.    Leave to Amend.**

Plaintiff has twice amended his Complaint, and thus the court will not grant leave to amend *sua sponte*. Because the Second Circuit has cautioned that the court "should not dismiss a pro se complaint 'without granting leave to amend at least once,'" *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (per curiam) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)), Plaintiff may file a motion seeking leave to amend within twenty (20) days of this Order. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("As a general matter . . . the district court has discretion whether or not to grant leave to amend, and its decision is not subject to review on appeal except for abuse of discretion[.]") (internal quotation marks and alterations omitted). In doing so, he should identify the claim or claims he seeks to amend and the reason or reasons why leave to amend should be granted.

In addition to his motion for leave to amend, Plaintiff should include a proposed amended filing which shall be entitled "Third Amended Complaint" and shall consist of numbered paragraphs containing short and plain factual allegations, a short and plain statement of each legal claim Plaintiff asserts, and a clear and concise statement of the relief requested. *See* Fed. R. Civ. P. 8(a) (listing required contents of a pleading that states a claim for relief). In the Third Amended Complaint, Plaintiff must allege all claims and name all defendants that Plaintiff intends to include, as the Third Amended Complaint will take the place of the SAC in all respects. Failure to file a Third Amended Complaint in the time period provided shall result in the dismissal of this case.

## CONCLUSION

The court GRANTS Defendants' motions to dismiss (Docs. 48, 49, 50, 51) and DISMISSES Plaintiff's Second Amended Complaint.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 21st day of March, 2019.

Christina Reiss, District Judge
United States District Court